## OSCARSON et al. v. NORTON et al.
### No. 5944.

Circuit Court of Appeals, Ninth Circuit.
March 31, 1930.

E. K. Cheadle, of Lewiston, Mont., W. C. Husband, of Harlowton, Mont., and Louis S. Beedy and Robert Mack Light, both of San Francisco, Cal., for appellants.

M. S. Gunn, Carl Rasch, E. M. Hall, and M. C. Gunn, all of Helena, Mont., for appellees.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

DIETRICH, Circuit Judge.

The controversy in suit is over one of three water rights claimed by appellees for the irrigation of a large body of farm lands in Montana of which, ·admittedly, they are the owners. The lands, aggregating more than 10,000 acres, were acquired prior to 1900 by the appellee Norton and the deceased husband of the appellee, Lyons, as partners, and came to be known as the Norton and Lyons ranch. For their irrigation the owners, at divers times between 1887 and 1893, made appropriations from Lebo creek, which in its course runs through the ranch, amounting to 1,020 inches, and in 1902 another appropriation of 5,000 inches from American Fork. The water under this latter appropriation was by means of a ditch carried to and discharged into Lebo creek and from Lebo creek to the lands, commingled with the Lebo creek water. Concerning the rights thus acquired there is no controversy, it being conceded that appellees own them.

The pertinent facts relating to the origin and history of the right in question are as follows: In 1906 a corporation named the Lake Lebo Irrigation Company, with a capital stock of 1,000 shares, owned a nearby reservoir site known as Lake Lebo—a mere basin naturally dry during the major part of the year. Conceiving that they needed a supplemental supply of water for their lands, Norton, Lyons, and one Labrie decided to obtain this site for the storage of flood waters to be diverted from American Fork. Accordingly they acquired all the stock of the Lake Lebo Irrigation Company, 498½ shares being transferred to Norton and Lyons and an equal amount to Labrie. The remaining three shares were transferred to one Urner (who had no lands) apparently for organization purposes only. Thereafter, seemingly, the corporation was treated as a mere form or shell and performed no active functions. While in its name stood the legal title to the reservoir site and the stock holdings were treated as evidence of the relative interests of the stockholders in the stored water, as an entity the corporation did nothing toward acquiring a water right; no meeting of stockholders or directors was ever held, no books or records were kept, and no moneys were disbursed by or through it; and at the end of twenty years, in 1924, it ceased to have even a formal existence, that being the period of its life as provided in its charter. In 1908, Norton, Lyons, and Labrie made an appropriation of the flood water of American Fork for storage purposes, enlarged their existing ditches to carry it to this reservoir site and, in short, did what was necessary to store it there for use on their lands when needed during the low-water season—all in their individual capacity, and for no purpose, at least so far as Norton and Lyons were concerned, other than the irrigation of the Norton and Lyons ranch. From the reservoir the water was released into Alkali creek, a tributary of Lebo creek, and by means of a ditch leading from Alkali creek about 160 acres north of Lebo creek were irrigated with this water exclusively; and every year some of it commingled with the water under the other right, in Lebo creek, was diverted to and used upon other portions of the ranch, no part of their right ever being used elsewhere or for any other purpose. Altogether about 4,000 acres of the ranch were actually

under irrigation, 1,000 on the north side and 3,000 on the south side of Lebo creek.

In 1916, Norton and Lyons organized a corporation called the Norton & Lyons Ranch Company, to which by deed dated June 6, 1916, they conveyed the entire ranch in consideration for all its capital stock. In the instrument their stock in the Lake Lebo Irrigation Company was not expressly mentioned but following a particular description of the lands is to be found this language:

"Also all other real estate, and any right, title, claim, or interest therein, not hereinabove described, which may be owned by the said parties of the first part, or any of them and situate in either the County of Sweet Grass or the County of Meagher, State of Montana.

"Together with all and singular, the tenements, hereditaments and appurtenances, thereunto belonging, or in anywise appertaining, and particularly all water and water rights, appurtenant to the said land, or used thereon."

As will later appear, the principal, if not the controlling question is whether this deed operated to convey to the corporation the reservoir water right.

Shortly after the execution of this deed Norton and Lyons sold all their interests to the appellants, and to consummate the transaction, transferred to them all the capital stock of the Norton & Lyons Ranch Company; they also turned over to them and to one Ruppert all their stock in the Lake Lebo Irrigation Company, 49 shares thereof going to Ruppert. How Ruppert came into the transaction or why this part of the stock was put in his name does not clearly appear. Appellants paid only a part of the purchase price and to secure the balance separate mortgages to Norton and Lyons were executed by the Norton & Lyons Ranch Company, apparently containing property descriptions identical with that of the deed. Seemingly, also, the mortgages, copies of which we do not find in the record, contained provisions for the release of portions of the property as the same were sold from time to time to third parties. The mortgagor being in default under both mortgages, suits in foreclosure were instituted, and went to final decrees by which the sale of all the property which had not been so released was ordered. At the sale the appellees here became the purchasers and in due time received sheriff's deeds, containing like descriptions.

With these undisputed facts as a background, the real matter in controversy may thus be stated: Appellants contend that they are still the lawful holders of 365½ shares of the Lake Lebo Irrigation Company's stock, and being such holders they are indirectly or equitably the owners of a 731/2000 interest in the reservoir right. This right, appellees contend, became appurtenant to the lands, was conveyed by the original deed, was covered by the mortgages, and was reconveyed by the sheriff's deeds; and, consequently, they hold both the legal and equitable title thereto. They therefore brought this suit to quiet their title, and in the court below they were given a decree as prayed.

Under the evidence we think there is no room for doubt that by their deed Norton and Lyons intended to vest in the Norton & Lyons Ranch Company their entire holdings, both of land and water, and that such was their understanding of what they had accomplished thereby. It is further perfectly clear that the Lake Lebo Company never acquired any title, either legal or equitable, to the flood water appropriation from American Fork or to the ditches by which the water was conveyed to the reservoir site and discharged therefrom and conveyed to the land; in the most favorable view to appellants it continued to hold only the legal title to the naked reservoir site. But we are of the opinion that when Norton and Lyons, holders of all of its capital stock, utilized the site for the purpose of effecting this appropriation they dedicated it to that purpose and it became an integral part of the right itself. There were no creditors or other third persons to object and, being the sole beneficial owners, they could competently make such a dedication. It is familiar doctrine that under such circumstances, courts will in the interest of justice disregard the corporate form and give effect to the intent of the real parties in interest.

Clearly, we further think, the right together with the physical works upon which its existence and exercise were dependent became appurtenant to the land. The appropriation was intended exclusively for such use and was so used. Appellants seek to make much of the fact that inasmuch as the mouth of Alkali creek is below the point where the ditch diverts water from Lebo creek to the lands on the south side and that the ditch from Alkali creek covers only about 160 acres on the north side, only so much of

the right as serves this 160 acres can be said to be appurtenant to the north side lands. But, as we understand, the heads of the two north side ditches from Lebo creek are below the mouth of Alkali creek. Furthermore, the entire body of lands was in a single ownership and the three water rights were acquired by such owners for the irrigation thereof. This reservoir right, while not in 1916 directly available for irrigation upon the south side, was none the less indirectly available, and hence the use thereof was beneficial to such lands. As the natural flow of Lebo creek diminished, instead of diverting it to both sides, that part thereof which would otherwise be utilized on the north side could be diverted into the south side ditch and the reservoir water utilized in its stead to cover the north side lands.

Indeed, appellants' claim defeats itself. Water can be appropriated only for a beneficial use and until it is so used the appropriation is incomplete. True, this inchoate right may not be defeated by an intervening appropriation so long as the holder thereof, after the construction of his diversion works, exercises due diligence in making such application of the water; but it still remains true that to perfect the right, actual use is indispensable. If the water covered by this "appropriation" was never used upon these lands and did not become appurtenant thereto, the appropriation itself has failed. More than twenty years have elapsed since it was initiated, and it was made for these lands and for no other purpose. It would require courage to contend that after such lapse of time the water covered by the "appropriation" could now for the first time be applied to a beneficial use, and to a use not originally contemplated, and that upon such application the appropriation could be held to relate back to 1908.

We have not deemed it necessary to comment upon the numerous decided cases cited upon both sides. Upon analysis it is found that they deal with divers phases of the law of irrigation and of deeds about which there can be no real controversy. The question here is of the application of those recognized principles to the facts. In what we have said of the relation of the reservoir site to the "water right," we are not to be understood as holding that the destruction of a means of diversion or storage carries with it the destruction of the water right. Undoubtedly the means and the right are measurably distinct; the two may rest in different ownerships and where originally in a single ownership the one may be alienated and the other reserved. But here the conviction is inescapable that Norton and Lyons contemplated individual ownership of this right the same as of the two earlier rights and that ownership of the means, including the reservoir site, should follow the right. The only circumstance of any substantial inferential value to the contrary is that when they sold to appellants they also turned over to them the certificate of stock in the Lake Lebo Company; but at most the implications are equivocal and in the light of all the conditions and other circumstances it fails to engender a doubt of the correctness of the conclusion we have reached. In view of the fact that there had been no formal conveyance of the reservoir site to either Norton and Lyons or to the company of that name, as a precaution it was but natural that the appellants should ask that the Lake Lebo Company certificate be turned over to them and equally natural that Norton and Lyons, who understood that they were alienating all their lands and water rights, should comply with such a request; in their view of the status of their holdings the certificate would be of no value to them.

Affirmed.